Ms. Przonski, good morning. Good morning, Your Honors. My name is Donna Przonski and I represent the EEOC in this matter. This appeal is about who is responsible for the breakdown in an interactive process after an employee requests a reasonable accommodation. If I may, I would like to start by addressing one general matter. In Kohl's brief, it argues repeatedly that the Commission makes statements in reliance on evidence that is not in the record. While that was true in district court, there is nothing in the brief the Commission has written or replied to this court that reflects any evidence that was not admitted. So I want to clarify to the extent the court has any concerns about that point. Because we didn't challenge the evidentiary exclusions and we didn't rely on them on Then with regard to the interactive process, Kohl's argues that Manning ended the process by leaving a March 31st meeting which was called to discuss her request for an accommodation due to her diabetes which was exacerbated by her working erratic shifts. And Kohl's also argues that she ended the process because she didn't follow up in contacting Kohl's again after her manager called her two weeks later. But the Commission's point I would be happy to expand on, but we tried to make it as clearly as possible in both of our briefs, it is that Kohl's ended the process when Manning brought in her doctor's note and requested a more stable work schedule and they said no. And in the process of discussing the requested accommodation, what would be medically acceptable for her, Manning explained to Kohl's managers that what she needed was her doctor's note had said basically between the hours of 9 and 6 would be a regular day at time work schedule that would be suitable for her. She told, Manning told her managers when she met with them on March 31st that she was available for a wider range of hours. Now Kohl's ignores this completely in its brief, but the district court didn't and it cited this evidence in several different places noting she asked for a more consistent day-to-day schedule, a steadier schedule, more regular and predictable schedule within a wider window of hours than 9 to 6. But as I see this, the last really point of contention is that after all these things happened, that she had resigned, the company called your client and asked her to reconsider. Well, I think you have to, in order to properly view the phone call conversation, I think you have to keep in mind the context of what happened in the office meeting where, as I say, Manning asked for something broader than the doctor's, the hours reflected in the doctor's statement and the response she got back, I mean, it's sort of like a brick wall. The company keeps saying we can't give you 9 to 5, we can't give you 9 to 6. And she keeps saying that's not what I'm asking. I'm asking for something broader than that. You could schedule me earlier or later, just not close, just not open. But they never addressed that. They just say no 9 to 6. So when they call, I'm sorry. But I thought, I mean, to go to Judge Toye's point, on April 9, after Manning was already in contact with the EOC, they go back, they ask her to come back to work and they specifically tell her, Carr says that she would talk with Cole's corporate office about potential accommodations when Manning asks about the work schedule in particular. So why not continue that conversation? I would think the EOC would have told her, absolutely continue that, don't throw yourself off a cliff without pursuing that. And she says the EOC told her, don't even call them back. But that's the reason she gave, isn't it, for why she didn't call back. No, actually, there's a factual dispute on that issue. I understood there was a factual dispute as to whether or not anyone from the EOC told her that. We were unable to establish that anyone did. But is there a factual dispute when she was asked by the doctor for the company, why didn't you follow up on that? She said someone from the EOC told her not to. In a very short exchange, she did answer that question, yes. But it was my impression, reading that deposition, that she just wanted to get out of there. But we don't go on impressions. No, that's correct. And so if we have her giving as a reason why she just didn't follow up on that, is that she believes someone from the EOC told her not to. Oh, I'm sorry, Your Honor. That means that the first two points of our answer to that may not have been clearly enough presented in our reply brief. The first answer is throughout most of Manning's deposition, when the portions of Manning's deposition that Coles relies on, saying the EOC told her not to do it, are very unclear. She just isn't certain of what happened at the time. She says she doesn't remember, it's a crazy time, she loved her job. So the other thing is the district court did say there's a genuine dispute of that. One of the reasons the court found at odds with this idea that the EOC told her not to call, which really doesn't make any sense, is that the reason she didn't call is the company didn't offer her a car, the manager who called her didn't offer her anything during the phone call, really, tangibly, other than part-time work. But I thought he also said, and this is undisputed as I understand it, that Carr would talk to Coles' corporate office, in which Manning asked him about the work schedule issue, which had created the impasse, and Carr said he would talk to Coles' corporate office about a potential accommodation. Manning interpreted that to mean Carr is going to talk to the same corporate office that already, on March 31st or earlier, said they have an open availability requirement, they can't modify their schedules. That's been the company's position throughout the entire case. Their open availability requirement restricted her, and having heard that articulated to her a number of times, she just didn't see that it was anything but futile to continue trying to get a rule changed that wasn't open to being changed. Instead, she quits herself her job. Why not go back to work and work whatever hours she thinks she can work and leave it at that? And then if the company fires her, they fire her. But why take this right off the cliff to where she's, instead of talking? That's an interesting point. I don't think she thought that would be appropriate. It would be violating the rules to come, you know, to accept a schedule that had her working 4 a.m. one morning until 10.30 p.m. another night and just leave before or not arrive. I don't think she thought that would be honest. So when we're evaluating the interactive process, we're going to be looking at this from a reasonable person's standpoint. Yes. Not what she believed. If what she believed was not reasonable. That's correct. Our point is that the reasons for her decision, at least there's a question of fact on whether the reasons for her decision were reasonable. And I think the only way really to drive the point home is POHL has maintained that it requires full-time employees to have open scheduling availability. And that's what it wanted from Manning. So other than accept a job with lesser benefits part-time, she was stuck with the choice of either working open availabilities all hours or continuing the conversation. Well, that makes sense if the conversation's likely to change. But if we have an open availability policy I think it's likely to change. I would think the EEOC would think this iterative process is really important because it avoids getting into situations just like what we have here now where someone throws themselves off the economic cliff and then they're left with either getting nothing or the employer is on the hook for a whole self-immolation. I believe you're right to the extent that the EEOC thinks this interactive process is important. I think the thing that makes this case different is she was suffering from a medical condition that was making her life, I don't know, I want to say a living hell. I don't know if that's appropriate. She just needed to change the hours she was working and the company was unwilling to do it. So I think she felt like she had reached the end of her rope and I think that's reasonable given her blood sugar skyrocketing up and down and her need for insulin injections dramatically increasing and her doctor's conclusion that the erratic hours is having an effect on that. I believe that's our point, that there's evidence in dispute on this issue. And the evidence viewed in light of, in most favorable light to Manning allows a court to conclude, a jury to conclude that she made a reasonable decision to protect her health. If the company had... She was in contact with the EEOC on April 2. Is the EEOC... She filed a charge, I believe. And then she says she spoke to the EEOC, although we don't know exactly when. I think she filed, she telephoned to file a charge. Somebody took down... How would the EEOC handle this today if someone called up in exactly the situation? Would you tell them, see what they say, talk, continue the conversation? Of course. Absolutely. I mean, I can only offer speculation about why anyone would have said that to her. It makes no sense to me. I don't believe... Is that fact established in the record? Pardon me? Is the fact that somebody from the EEOC told her not to call back a fact that is on the record? That is a fact that is in dispute. It is in dispute? Yes. How is it in dispute? She doesn't dispute it. It's not in dispute that she alleged that. What's in dispute is that you disagree with her, but the record says that this is what she was told. So whether that's true or not is in dispute. She did testify in one place. Yes, it's true. But otherwise she also offered different testimony when asked, did the EEOC tell you not to call? She said, I don't remember. It was a crazy time. I was very emotional. I loved my job. She was just having a very difficult physical time. But no, we do not tell people not to. That's beside the point. In this case, I want to know what other facts on the issue that I'm asking about. Well, those facts exist, the ones I just mentioned. And the other fact the district court took under consideration was that the car didn't say anything to Manning that would suggest there was anything fruitful that would come out of that. And that was not a reasonable accommodation.      Thank you. Thank you. Thank you. Ms. Kettering, good morning. Good morning. May it please the court. My name is Melinda Kettering and I'm here on behalf of the Appellate Equals Department of Historic Inc. And first of all, I want to address the EEOC's contention that there were no statements of fact in either their opening brief or their reply brief that were not properly in the record. And that is just untrue. And I have a list here. And it certainly is not an exhaustive list, but these are examples. For example, on page 8 of the EEOC's brief, they state, the first full paragraph they state, the EEOC argues that certain schedules were off the table. That information was not in the EEOC Statement of Additional Material Fact. Page 9 of their brief first paragraph where the EEOC claims that Manning asked to modify her schedule on two specific days and the request was denied. That, again, that information was not in the EEOC Statement of Additional Material Fact. And the court specifically ordered that the EEOC could not affirmatively rely on statements of fact that were not in their Statement of Additional Material Fact. Page 10, last paragraph, the EEOC alleges that Manning said, well, you just told me corporate won't do anything for me. That allegation wasn't in the EEOC Statement of Material Fact. Page 11, the first paragraph, the EEOC claims that there is evidence that Manning did not contact calls after Carr's phone call because, Carr said, nothing to suggest that calls had reconsidered its denial of a request for a stable schedule. Those allegations were not in the EEOC Statement of Additional Material Fact. They only appeared in the opposition to Cole's Statement of Material Fact. And, again, that was where the court said you can't rely on those facts affirmatively. Also, in the reply brief, it's even more egregious there. Pages 8 through 9 of the reply brief, the EEOC's allegations regarding Dr. Brodsky don't appear in the EEOC Statement of Material Fact. And, furthermore, the district court specifically excluded some of this information from the record because the EEOC failed to comply with the local rules. The court's order, page 20, which is the addendum, page 20, footnote 47, that information was specifically excluded. It says that employment with Cole's aggravated Manning's medical condition. And the EEOC cites Appendix 715. The court specifically excluded that from the facts. Page 12, second paragraph, the EEOC's allegations about how Manning explained in detail how her system was having difficulty and she started to cry. That wasn't in the EEOC Statement of Additional Material Fact. Page 19, last paragraph, the testimony from Dr. Larson about ketosis. That wasn't anywhere in the EEOC Statement of Additional Material Fact. And Manning's alleged, oh, sorry, pages 21 through 22 of the EEOC's reply brief, Manning's alleged testimony regarding her medical conditions were not contained in the EEOC Statement of Additional Material Fact. So it's just, it's untrue that there are, the EEOC Statement with regard to the facts in the record is just untrue. There are all sorts of facts that they rely on in both their opening brief and in their reply brief that did not appear in the record that was before the EEOC Statement of Additional Material Fact. And this is after the district court specifically said, both the magistrate and the Article III judge said that they couldn't rely on those facts. In terms of the legal arguments, after Manning notified Coles that she needed an accommodation, both Coles and Manning had an obligation to participate in the interactive process in good faith. And the First Circuit and many other courts have held that an employee who fails to engage in the interactive process in good faith is not eligible for an accommodation. Or who obstructs the interactive process can't state a failure to accommodate claim. And that is particularly true where an employee prematurely ends the interactive process by either resigning or retiring. And that's what happened here. Manning's failure to engage in the interactive process is fatal to the EEOC's claim. Let me ask you the one thing, I'm having trouble understanding your argument. Employee begins, they both begin the process. Yes. The ball is in the employee's court first. And the employee proposes a specific accommodation. And let's assume that the fact finder could find that that was a reasonable accommodation that would allow the employee to do the work. And the employer simply says, no, we won't do that. Period. But sits at the table. Plays 20 questions, says try again. Doesn't offer any accommodation back that is reasonable. How do we, what's the employee to do in that situation? And I would say that is not what happened here, Your Honor. But. The record evidence shows that Cole simply said. I'm not, we'll get to that. I'm trying to understand what your position is on that situation. If the employer just says no and doesn't offer any other alternative reasonable accommodation. The interactive process requires the employer and the employee to talk about what the employee's restrictions are. And to discuss possible accommodations that might work for both the employee and the employer. And that didn't happen here. And it's not because Coles wasn't willing to do that. It was because Manning refused to have a discussion with them. She had a discussion and she proposed. I think the district court found that the fact finder could determine that the accommodation she proposed was a reasonable one. And maybe it could have. But that doesn't mean that that was the only possible accommodation. And Coles as the employer is not obligated to give an employee specifically the obligatory accommodation. The accommodation that they request. They're obligated to give them an effective accommodation. And in fact the employer has the right to choose between different types of accommodations that might be reasonable. Suppose they hadn't gone back to her. In which that's kind of the hypothetical I'm saying. They have a meeting. She says I want a reasonable accommodation. I need a reasonable schedule. They say no, we can't change the schedule. That would mean changing it for everyone. Period. And then she walks out. But they attempted to have a discussion with her about other potential accommodations. Was there something else that may have worked for her? Not only did they try to have that discussion with her during the meeting that she walked out of and slammed the door. But Tricia Carr ran after her into the break room and said calm down, let's have a discussion. Let's talk about potential accommodations that may work for you. And again she said no and packed up her belongings and left for the day and never returned. And then Tricia Carr reached out to her the following week. She called her up and said let's talk. Let's consider all possible accommodations for both full-time and part-time employment. And she refused. And what the evidence shows is that she refused because at least in her mind, the EEOC told her not to communicate with Coles. And she does not deny that fact. She has said two separate things. She said she didn't think that further discussion would be fruitful. But she also said and she does not deny this. She said that she didn't call back because Coles told her not to. She told Dr. Born that and she affirmed that during her deposition. She said that some gentleman from the EEOC told her that. Hadn't Carr been told early on by HR that they could make an accommodation that Carr then never offered to her? But that's not so. I thought that Carr had been told that they could make an accommodation that she would not get, for example, late hours one day, early hours the next. And Carr did testify that that was communicated to me. Well, but that's not our record. Our record is the summary judgment. And didn't the plaintiff deny that any proposal had been made? She denied hearing that. She did deny hearing that. So you have to assume that. That's correct. So does that leave us with the situation where Carr was told you could offer her X and Carr didn't offer it? Well, no. I mean, even if constrain all reasonable inferences in favor of the plaintiff, it could just be that the conversation didn't get that far and she wasn't able to communicate that to her. Because it's also clear from the record that between the time the meeting started and the time that Manning left, even under the EEOC's version of the facts, it was less than a half an hour between the time the meeting started and the time that Manning left the building for the day and forever. So Manning did not give Coles an opportunity to have that discussion. And they repeatedly tried to have a discussion with her about potential accommodations. The EEOC's regulations are clear that the interactive process is designed so that both the employee and the employer understand what the employee's restrictions are and they can talk about possible accommodations that would enable the employer to accommodate the employee's restrictions. And again, Coles does not have an obligation to give an employee the accommodation that they demand. They have an obligation to give them an accommodation that is effective. And under these circumstances, as the district court found, Coles didn't have an opportunity to get that far because Manning frustrated the interactive process by refusing to talk to her supervisors and in fact slamming the door on them. But despite that fact, they ran after her and tried to continue the dialogue because they wanted to work something out. They wanted to be able to provide her an accommodation that would work for both the employer and the employee. And they weren't able to do that because Manning refused to communicate with them and at least in part because the EEOC told her not to communicate with Coles. And that is the record evidence and I can move on to another argument unless you have another question. And I do also want to point out that even if Coles had provided Manning with the perfect schedule that she wanted, it still would not have been an effective accommodation because as the record shows, Manning has not been able to control her blood sugar levels after resigning even when she has regular sleep patterns and regular eating patterns. This is medical evidence from like a month or two after she resigned. That is correct. And is there evidence in the record that a jury could buy that in that intervening two months because of the trauma, emotional trauma of the resignation and everything, her medical condition deteriorated? There is no evidence to support that theory. In fact, Manning says that nothing has changed medically since she resigned, that it has been the same. What has changed is the fact that she gets regular meal and sleep patterns which was why she was asking for the schedule change was so that she could have just that. And even when she is given that, she says that her blood sugar levels are uncontrollable. So even if she had been given this perfect schedule that she was looking for, it wouldn't have changed anything for her medically. And so the EEOC has the burden of proving that the requested accommodation would have effectively accommodated her medical restrictions and based on the evidence in the record, that just is not so. It wouldn't have happened. And the final issue is with regard to constructive discharge. And there the EEOC claims that Manning faced a severe threat to her health and even possible death if she continued working erratic hours at Coles. And there is no evidence in the record to suggest that. And the information that the EEOC tries to put in in their reply brief, again, that was not record evidence that was before the district court and shouldn't be considered by this court either. And Manning is not qualified to testify about her self-diagnosis because she's not a doctor. She's a lay person. And it's an objective person standard. Would a reasonable person in Manning's shoes have felt compelled to resign? And I think that as the district court held, a reasonable person standing in Manning's shoes would not have felt compelled to resign under those circumstances. Thank you. If you have no further questions, I would just respectfully request that the court affirm the decision of the district court. Thank you very much, Ron.